# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>            *Plaintiff*,<br>     v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>            *Defendants*. | CASE NO.<br><br>**EMERGENCY MOTION** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT AND EXPEDITED DISCOVERY**

**Table of Contents**

INTRODUCTION ------------------------------------------------------------------------------------- 5

ARGUMENT ----------------------------------------------------------------------------------------- 7
    I.    STANDING AS SOLE ASSIGNEE ------------------------------------------------------ 7

    II.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS --------------- 7
        A.   Defendants Have Purposefully Directed Their Activities at This Forum ---------------- 8
        B.   This Action Arises Out of or Relates to Defendants' Forum Activities ------------------ 8
        C.   Exercise of Jurisdiction Comports with Fair Play and Substantial Justice --------------- 9

    III.  PLAINTIFF IS ENTITLED TO IMMEDIATE INJUNCTIVE RELIEF -------------------- 9
        A.   Plaintiff Is Likely to Prevail on Its Patent Infringement Claim --------------------------- 10
        B.   Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief ------------ 11
        C.   The Balancing of Harms Favors Plaintiff -------------------------------------------------- 13
        D.   A Temporary Restraining Order Will Not Harm the Public Interest -------------------- 14

    IV.  PLAINTIFF IS ENTITLED TO AN ORDER FREEZING DEFENDANTS' ASSETS
    AND EXPEDITED DISCOVERY ------------------------------------------------------------------ 15
        A.   Preventing the Fraudulent Transfer of Assets is Appropriate --------------------------- 15
        B.   Plaintiff is Entitled to Expedited Discovery ---------------------------------------------- 16

    V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ------------------------------- 17

CONCLUSION ----------------------------------------------------------------------------------------- 18

## TABLE OF AUTHORITIES

Cases

*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364–65 (Fed. Cir. 2010) --------------- 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) --------------------------------------- 8

*Celsis in Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ------------------------ 11

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) --------------------------------------- 13

*Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) ----- 17

*Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) -------------- 9

*Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197–98 (3d Cir. 1990) --------------------- 15

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456–57 (Fed. Cir. 1988) --------------------- 11, 14

*Malibu Media, LLC v. John Doe*, No. 16-cv-942, 2016 WL 952340 *(D.N.J. Mar. 14, 2016)* ---- 17

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) ------------------------------------- 7

*Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339–40 (Fed. Cir. 2007) ------------------------------- 7

*New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed. Cir. 1992) ---- 11

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007) ---------------------- 7, 8

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) -------------------------------------- 16

*PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) ----------------- 14

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) --- 10

*Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ------------------------------------------------ 8

*Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) -------------------- 9

*Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ----------------------- 9, 14

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) --------------------- 7

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) ------------------ 10

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375–76 (Fed. Cir. 2009) -------9, 10

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) ----------------------------- 8

*Tyson v. Coinbase Global, Inc.*, 2024 U.S. Dist. LEXIS 2576, at *5 (D.N.J. Jan. 4, 2024)-------16

*Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). -------------- 13, 14

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ------------------------------------- 9

Statutes

Fed. R. Civ. P. 26(d)(1)----------------------------------------------------------------------------------16

Plaintiff Guangdong Aoyun Technology Co., Ltd. ("Plaintiff") ("Plaintiff") submits this memorandum of law in support of its Ex Parte Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "TRO Motion").

## INTRODUCTION

Plaintiff, the sole and exclusive assignee of all rights, title, and interest in U.S. Patent No. 12,180,977 ("Asserted Patent"), acquired from Guangdong Wanyi Electronics Co., LTD. on July 9, 2025, brings this action to stop Defendants' ongoing, willful infringement.

Plaintiff seeks immediate temporary ex parte relief for patent infringement and unjust enrichment against the defendants identified on Schedule A [ECF No. 2-3], Exhibit 2 to the Verified Complaint (the "Defendants"). Plaintiff is the exclusive assignee of the Asserted Patent, which covers a high-speed booster fan module that combines fan blades, a boosting mechanism, and flow-guiding structures to increase wind speed, extend air supply distance, and reduce noise. Plaintiff manufactures and sells products embodying the Asserted Patent through its own sales channels through licensing its inventions and on major online marketplaces. (Verified Complaint ("Compl.") ¶¶ 9-14 [ECF No. 2]).

As alleged in the Verified Complaint [ECF No. 2] and supported by the accompanying declarations, Defendants—foreign entities—make, import, sell, and offer to sell infringing products ("Unauthorized Products") through fully interactive e-commerce stores operating under the seller aliases in Schedule A. These stores target customers in this District, often with infringing goods already inventoried in the United States and share identifiers indicating a coordinated operation. On information and belief, and as shown in Exhibit 4 of the Verified Complaint [ECF No. 2-5], multiple nearly identical Unauthorized Products are sold by different seller aliases, further evidencing coordination.

Defendants exploit the anonymity of the Internet and the protection of international borders to conceal their identities, obscure the scope of their activities, and preemptively ship infringing goods to U.S. warehouses for distribution through third-party marketplaces and other channels. Plaintiff's investigation confirms that Defendants' accused products meet each limitation of at least one claim of the Asserted Patent (Compl. Exs. 5.1 to 5.3 [ECF Nos. 2-6 to 2-8]), and that Defendants use aliases and fulfillment methods designed to avoid detection.

Plaintiff's prior enforcement history demonstrates the critical need for immediate, ex parte relief. In a recent NDIL action, the vast majority of defendants dissipated their assets before judgment could be enforced, leaving only de minimis balances. For example, as shown in TRO Exhibit G, although the Court awarded Plaintiff $118,080 against one defendant, the restrained account held only $189 at the time of enforcement—effectively nullifying the judgment. Without a prompt freeze order, the same dissipation is likely to occur here, depriving Plaintiff of any meaningful remedy. (Zhu Decl. ¶3-4, Ex. 1).

On August 5, 2025, a known infringer in a related case sent a message admitting to actively monitoring Plaintiff's filings, planning appearances to defeat ex parte relief, initiating reexamination petitions, and counterclaiming for alleged losses. (Zhu Decl. ¶5, Ex. 2)

These facts establish ongoing infringement and a substantial risk that Defendants will transfer, hide, or dissipate assets if given notice. Immediate ex parte relief—including a temporary restraining order, asset freeze, and expedited discovery—is essential to prevent irreparable harm and preserve the Court's ability to grant effective final relief.

# ARGUMENT

## I. STANDING AS SOLE ASSIGNEE

Plaintiff Guangdong Aoyun Technology Co. Ltd., ("Aoyun" or "Plaintiff") is the sole and exclusive assignee of all rights, title, and interest in U.S. Patent No. 12,180,977 ("Asserted Patent"), acquired from Guangdong Wanyi Electronics Co., LTD. on July 9, 2025. (Compl. Exs. 1.1 and 1.2 [ECF Nos. 2-1 and 2-2]).

Plaintiff owns 100% of the Asserted Patent and has all substantial rights. Plaintiff has standing to sue in its own name for past, present, and future infringement. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364–65 (Fed. Cir. 2010); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339–40 (Fed. Cir. 2007).

## II. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff bears the burden of establishing personal jurisdiction, but at this stage need only make a prima facie showing, with all pleadings and affidavits construed in Plaintiff's favor. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Federal courts in New Jersey have jurisdiction to the extent permitted by New Jersey's long-arm statute, which is coextensive with federal due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). Due process is satisfied where a defendant has sufficient "minimum contacts" with the forum.

Personal jurisdiction may be general or specific. Under specific jurisdiction, the defendant must (1) purposefully direct activities at the forum, (2) the claim must arise out of or relate to those activities, and (3) exercising jurisdiction must comport with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007).

Even "isolated or sporadic" contacts may suffice if they give rise to the claims asserted. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

### A. Defendants Have Purposefully Directed Their Activities at This Forum

Personal jurisdiction exists where a defendant has purposefully availed itself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). This occurs when a defendant targets the forum by, for example, operating an interactive website through which residents can purchase goods. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

Here, Defendants have intentionally directed their activities toward New Jersey by offering for sale, selling, and delivering infringing products to at least one New Jersey customer (Choi Decl. Ex. 1; Compl. Ex. 3 [ECF No. 2-4]). Each Defendant operates an interactive e-commerce store through which New Jersey residents can view, order, and pay for the accused products. These activities constitute purposeful availing themselves of this forum.

### B. This Action Arises Out of or Relates to Defendants' Forum Activities

Specific jurisdiction requires that the claims arise out of or relate to the defendant's forum-related conduct. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007). The present action directly arises from Defendants' sales of the accused products to New Jersey residents through their interactive websites. All infringing products at issue were sold into this District (Choi Decl. Ex. 1; Compl. Ex. 3 [ECF No. 2-4]). The relatedness requirement is therefore satisfied.

### C. Exercise of Jurisdiction Comports with Fair Play and Substantial Justice

Once minimum contacts are established, jurisdiction will be unreasonable only in rare cases. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993). Here, New Jersey has a strong interest in protecting its residents from the sale of infringing goods, and Plaintiff has a clear interest in obtaining relief in its chosen forum. The burden on these foreign Defendants is outweighed by these interests, and the exercise of jurisdiction is consistent with fair play and substantial justice.

### III.     PLAINTIFF IS ENTITLED TO IMMEDIATE INJUNCTIVE RELIEF

Under 35 U.S.C. § 283, courts may issue injunctions "to prevent the violation of any right secured by patent." In patent cases, the grant of a temporary restraining order ("TRO") or preliminary injunction is governed by Federal Circuit law. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012). The right to exclude others from practicing the invention is one of the most valuable rights secured by a patent and preserving that right during litigation is a core purpose of injunctive relief. *Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).

The standards for granting a TRO are the same as those for a preliminary injunction. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375–76 (Fed. Cir. 2009). To obtain such relief, the movant must show:

1. A likelihood of success on the merits;
2. Irreparable harm absent relief;
3. That the balance of hardships favors the movant; and
4. That the public interest supports the injunction.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The purpose of this relief is to preserve the status quo and prevent further infringement until the merits can be adjudicated.

### A. Plaintiff Is Likely to Prevail on Its Patent Infringement Claim

The Asserted Patent is presumed valid under 35 U.S.C. § 282. Plaintiff's evidence, including claim charts, shows the accused products infringe at least one claim. Defendants have made no validity challenge.

To obtain a TRO or preliminary injunction, Plaintiff must show it is likely to prove infringement and that the Asserted Patent will withstand any validity challenge. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Issued patents are presumed valid under 35 U.S.C. § 282, and that presumption applies at all stages of litigation, including preliminary relief proceedings. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–77 (Fed. Cir. 2009); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001). The Federal Circuit has held that, where the record contains no evidence challenging validity, the presumption of validity alone satisfies a patentee's burden on this element for purposes of preliminary relief. *Titan Tire*, 566 F.3d at 1377.

Plaintiff asserts infringement of independent claim 1 of the Asserted Patent. Plaintiff has carefully and diligently analyzed at least one infringing product sold by each Defendant identified in Schedule A (Compl. Ex. 2 [ECF No. 2-3]). For brevity, three representative claim charts are provided for Defendant Nos. 1, 7 and 8, each mapping the limitations of claim 1 to the corresponding features of an accused product. These charts are attached to the Verified Complaint as Exhibits 5.1 to 5.3 [ECF Nos. 2-6 to 2-8]. The remaining claim charts for other infringing products are readily available should the Court wish to review them. This evidence

demonstrates that every limitation of claim 1 is met literally or equivalently, establishing a clear likelihood of success on the merits of Plaintiff's infringement claim.

At this preliminary stage, the Court need only assess the persuasiveness of any validity challenge if raised, recognizing that the full evidentiary record will be developed later. *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed. Cir. 1992).

### B. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The irreparable harm inquiry addresses injuries "that no damages payment, however great, could address." *Celsis in Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Plaintiff's evidence demonstrates that, without a TRO and preliminary injunction, the harm here will be immediate, ongoing, and beyond the reach of monetary compensation.

#### 1. Loss of Patent Exclusivity

Plaintiff is the exclusive assignee of the asserted utility patent, which includes independent claim 1. Under 35 U.S.C. § 154(a)(1), a patent grants "the right to exclude others from making, using, offering for sale, or selling the invention" in the United States. This right to exclude is the core value of any patent. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456–57 (Fed. Cir. 1988). If infringement is allowed to continue during the litigation, that right is eroded in real time—time that cannot be restored once the limited patent term expires.

Here, Defendants' accused products meet each limitation of at least claim 1 of the Asserted Patent. (Compl. Exs. 5.1 to 5.3 [ECF Nos. 2-6 to 2-8]). They are being made, used, offered for sale, and sold in the United States without authorization, thereby practicing Plaintiff's patented invention and directly infringing the asserted claim. Each infringing sale unlawfully appropriates the exclusive rights secured by the patent, diminishing Plaintiff's market share and

competitive position. Because the patent right is a negative right—the right to exclude—every unauthorized act of infringement erodes that exclusivity in real time, causing harm that cannot be compensated fully by monetary damages or restored once the finite patent term has expired.

### 2. Inability to Enforce Monetary Judgments

Defendants may contend that any harm to Plaintiff could be remedied through monetary damages, but real-world experience proves otherwise. In a recent NDIL enforcement action, Plaintiff secured substantial default judgments—$118,080—against one of the foreign infringers Yet, by the time judgment was entered, that defendant had already emptied its account, rendering collection virtually impossible. (Zhu Decl. ¶3, Ex. 1) Given Defendants' overseas location, use of shifting seller aliases, and reliance on offshore payment processors, the same rapid asset dissipation is highly likely here, making an immediate freeze order essential to preserve any meaningful relief.

### 3. Infringers' Playbook: Track, Block, Transfer – Why Ex Parte Relief Is Essential

The need for ex parte relief is underscored by a message Plaintiff received on August 5, 2025, from a known infringer in a related matter. (Zhu Decl. ¶5, Ex. 2). In that communication, the infringer openly outlined a strategy to track Plaintiff's court filings in real time, immediately enter appearances to block ex parte relief, initiate reexamination petitions to divert resources, and file counterclaims to increase litigation burdens. Such statements make clear that these actors—and those working with them—are not merely defending themselves but are actively preparing to frustrate enforcement by preemptively transferring assets as soon as a case is filed. This real-time monitoring and planned asset dissipation leave no doubt that immediate, under-seal action is essential to preserve the Court's ability to grant effective relief.

### 4. Loss of Market Share, Price Erosion, and Goodwill

Defendants' continued sales directly compete with Plaintiff's own authorized products, leading to immediate price erosion and loss of market share. Because online sales are heavily driven by product visibility, customer reviews, and platform algorithms, each sale of an infringing product displaces a sale of Plaintiff's patented product, including future repeat purchases from the same customers. This damage to Plaintiff's competitive position and goodwill is inherently difficult to quantify and cannot be adequately remedied with damages after the fact.

### 5. Equitable Necessity of Injunctive Relief

As the Supreme Court recognized in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006), injunctive relief must be decided according to traditional equitable principles. Here, the combination of ongoing infringement of claim 1, coordinated use of multiple seller aliases to continue sales, proven history of asset dissipation, and expressed intent to frustrate enforcement creates a textbook case for irreparable harm. Without an injunction, Plaintiff's core patent rights will be rendered effectively meaningless, and the Court's ability to provide meaningful final relief will be compromised.

Accordingly, immediate injunctive relief is essential to preserve the status quo and protect Plaintiff's statutory right to exclude others from practicing the invention claimed in the Asserted Patent.

### C. The Balancing of Harms Favors Plaintiff

The balance of hardships favors Plaintiff because any harm to Defendants results from their own infringing conduct and thus carries little weight. *Windsurfing Int'l, Inc. v. AMF, Inc.*,

*782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)*. At the same time, preserving the patentee's right to exclude is a central equitable concern. *Sanofi-Synthelabo v. Apotex Inc.*, *470 F.3d 1368, 1383 (Fed. Cir. 2006)*. Any harm to Defendants would be the direct result of their own infringing conduct and thus should carry little weight. As the Federal Circuit has recognized, "[t]o the extent defendants elect to build a business on products found to infringe, they cannot be heard to complain if an injunction destroys the business so elected." *Windsurfing*, 782 F.2d at 1003 n.12.

Here, the record shows that Defendants are foreign entities operating under aliases, concealing their identities, and selling infringing products through coordinated e-commerce storefronts. They have previously transferred funds before enforcement of judgments, leaving negligible balances, and a known related infringer has threatened to take steps specifically to defeat ex parte relief. In contrast, Plaintiff faces immediate and irreparable harm from ongoing infringement, including loss of patent exclusivity, market share, goodwill, and the likely inability to collect monetary damages. On these facts, the balance of hardships weighs strongly in Plaintiff's favor.

**D. A Temporary Restraining Order Will Not Harm the Public Interest**

The public interest strongly favors protecting valid patent rights. As the Federal Circuit has recognized, there is a "strong public policy favoring the enforcement of patent rights." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). The question is whether granting the requested relief would harm any critical public interest. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988).

Here, no such countervailing interest exists. To the contrary, the public benefits from a functioning patent system that rewards innovation, deters infringement, and prevents consumers from unknowingly purchasing infringing goods. Defendants' conduct—concealing their

identities, using coordinated seller aliases, and preemptively warehousing infringing products in the U.S.—undermines both fair competition and consumer trust. Granting an injunction will help ensure that only authorized, non-infringing products reach the marketplace, aligning with the public's interest in lawful commerce.

## IV.   PLAINTIFF IS ENTITLED TO AN ORDER FREEZING DEFENDANTS' ASSETS AND EXPEDITED DISCOVERY

### A. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests an immediate ex parte asset freeze to preserve its right to an equitable accounting of Defendants' profits from sales of the infringing products. Without such relief, Defendants—foreign entities operating anonymously—are likely to transfer or conceal funds, rendering any judgment unenforceable. Defendants hold most of their assets in offshore accounts, making them easy to move beyond this Court's reach. Plaintiff's prior enforcement history confirms the risk: in a recent NDIL case, two infringers generated sales leading to damages awards of $421,180 and $118,080, respectively. Yet, by the time enforcement was sought, one account held a zero balance and the other contained only $189. These outcomes illustrate the speed with which such sellers dissipate assets once litigation is anticipated, underscoring the urgent need for an ex parte freeze to prevent irreparable loss. (Zhu Decl. ¶ 3-4, Ex. 1).

Courts have long recognized their authority to prevent such dissipation. The Third Circuit has confirmed that district courts may grant preliminary injunctions to restrain assets to protect a future equitable remedy. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197–98 (3d Cir. 1990). Rule 65 also empowers courts to issue asset restraints where, as here, the complaint seeks equitable relief, such as disgorgement of profits.

Given the strong evidence of ongoing infringement, the substantial likelihood of success on the merits, and Defendants' demonstrated ability and intent to evade enforcement, an ex parte asset restraint is both proper and necessary. Without it, Defendants will likely move their ill-gotten gains to offshore accounts before Plaintiff can collect, frustrating the Court's ability to grant meaningful final relief.

### B. Plaintiff is Entitled to Expedited Discovery

Federal courts have broad discretion to order discovery before the Rule 26(f) conference upon a showing of good cause. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); Fed. R. Civ. P. 26(d)(1). Courts in this District apply a "good cause" standard, weighing the need for expedited discovery against any prejudice to the responding party. *Tyson v. Coinbase Global, Inc.*, 2024 U.S. Dist. LEXIS 2576, at *5 (D.N.J. Jan. 4, 2024). Good cause exists where expedited discovery is necessary to prevent irreparable harm or to preserve the Court's ability to provide effective relief.

Here, expedited discovery is essential to identify and freeze Defendants' financial accounts used in their ongoing infringing operations. The discovery sought is narrowly tailored to obtain only the information necessary to enforce the asset restraint and prevent further dissipation of funds, including:

1. The true identities of Defendants;
2. The full scope of their infringing activities;
3. The source or location of their inventory of Unauthorized Products; and
4. The financial accounts into which Defendants' proceeds have been transferred.

Plaintiff's investigation shows Defendants are foreign entities operating anonymously through multiple seller aliases and using fulfillment methods designed to avoid detection. In prior enforcement actions, Plaintiff secured substantial monetary judgments, including a judgment of $181,080 against one such foreign defendant. Yet recovery proved impossible because defendants shifted their assets out of reach almost immediately after the case was filed. This recurring pattern shows that without immediate discovery, critical evidence of asset location and sales channels will disappear, rendering the TRO's asset restraint ineffective.

Courts in this District permit expedited discovery upon a showing of good cause, which exists where the plaintiff's need outweighs any prejudice to the defendant, particularly when the request is narrowly tailored and necessary to enforce a TRO. *See Malibu Media, LLC v. John Doe*, No. 16-cv-942, 2016 WL 952340, at 1 (D.N.J. Mar. 14, 2016). That is precisely the situation here—without swift discovery of payment processor and bank account information, the TRO's asset restraint will have little practical effect. *See also Admarketplace, Inc. v. Tee Support, Inc.*, No. 13-cv-5635, 2013 WL 4838854, at *5 (S.D.N.Y. Sept. 11, 2013) (finding good cause for expedited discovery where plaintiff otherwise had no realistic ability to enforce injunctive relief).

Because the relief sought is narrowly targeted, time-sensitive, and directly related to preventing further irreparable harm, Plaintiff respectfully requests that the Court authorize expedited discovery as set forth in the proposed order.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

Under Fed. R. Civ. P. 65(c), the Court has discretion in setting the amount of the bond. *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988). Given the strong, unrebutted evidence of infringement presented here and the urgent need for ex parte

relief, Plaintiff respectfully submits that a bond of no more than $5,000 is appropriate. This amount is consistent with bonds imposed in comparable Schedule A cases within this Circuit, including those involving multiple foreign defendants and similar injunctive claims.

A $5,000 bond is reasonable because (1) Plaintiff's infringement evidence is clear detailed, and supported by claim charts and exhibits; (2) Defendants are foreign entities engaged in coordinated online sales to evade enforcement, making the risk of wrongful restraint minimal; and (3) this case involves only fifteen defendants—far fewer than the large-scale Schedule A actions where the same bond has been ordered. Plaintiff is prepared to post the bond immediately upon issuance of the TRO so relief can take effect without delay. Under these circumstances, a higher bond would serve no practical purpose and would unnecessarily burden Plaintiff's ability to obtain the urgent relief needed to prevent irreparable harm.

## CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without an injunction, Plaintiff respectfully requests the Court immediately grant the TRO in the form attached, freeze Defendants' assets, authorize expedited discovery, and set a preliminary injunction hearing.

Dated: August 22, 2025                    Respectfully submitted,

                                          */s/ John H. Choi*
                                          John H. Choi
                                          John H. Choi & Associates LLC
                                          65 Challenger Road, Suite 100
                                          Ridgefield Park, NJ 07660
                                          Tel. 201.580.6600
                                          Fax. 201.625.1108
                                          Email. jchoi@jchoilaw.com

                                          *Counsel for Plaintiff*