IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>               *Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>               *Defendants*. | CASE No.: 2:25-cv-14859-MCA-JRA |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.   Introduction**

Defendants' opposition does not overcome the established record showing Plaintiff's entitlement to injunctive relief. Instead, Defendants rely on conclusory assertions, selective citations, and declarations that are already contradicted by subsequent clarification and the United States Patent and Trademark Office official record. As explained below, none of Defendants' arguments undermine Plaintiff Guangdong Aoyun Technology Co., Ltd.'s showing on likelihood of success, irreparable harm, balance of equities, and public interest.[1]

---

[1] Defendants opposition papers were filed on September 8 at 5:59pm, the night before the scheduled September 9, 12pm preliminary injunction hearing. Given the short notice, Plaintiff reserves the right to supplement this response.

## II. Plaintiff Has Demonstrated a Likelihood of Success on the Merits

### A. Patent Ownership and Standing

Defendants contend that Plaintiff lacks standing because of Mr. He's earlier declaration. That argument is not viable. The controlling evidence of ownership is the assignment as recorded with the United States Patent and Trademark Office, which reflects that Guangdong Wanyi Electronics Co., Ltd. assigned the '977 Patent in full to Plaintiff, Guangdong Aoyun Technology Co., Ltd. (see ECF 2-2 Exhibit 1.2; see also attached **Exhibit 1**). Courts have consistently recognized USPTO assignment records as dispositive evidence of ownership and standing.

Defendants' reliance on Mr. He's declaration is misplaced. Based on Plaintiff's investigation, that document was obtained under circumstances raising serious concerns about reliability, including business pressures from downstream customers—some of whom are defendants in this very case. A declaration executed in such circumstances cannot outweigh the objective and authoritative evidence reflected in the USPTO's official assignment record, which confirms Aoyun as the sole owner of the '977 Patent. In the event that this case moves forward, Plaintiff will further investigate and take discovery on the issue.

### B. Validity of the '977 Patent

**(i) Defendants' "On-Sale" Argument Based on Amazon Screenshot**

Defendants contend that the '977 Patent is invalid under 35 U.S.C. § 102 because the accused "K50" fan (ASIN B0CVFWX28B) was allegedly listed for sale on Amazon in February 2024. Their sole evidence is a Seller Central screenshot purporting to show the listing as "active" on February 11, 2024.

This reliance is misplaced. First, the screenshot is unauthenticated and self-serving, originating entirely from Defendants' own account with no corroboration from Amazon or any neutral source. Courts have consistently held that unverified, self-generated documents are not competent evidence of prior public use or sale. *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1302 (Fed. Cir. 2016).

Second, even if credited, the screenshot does not establish what Defendants claim. A timestamp showing that a listing was "active" on a certain date merely reflects that a listing was created in Seller Central. It does not prove that the accused product was actually offered for sale, much less that it embodied every limitation of the '977 Patent. Without independent sales records, invoices, or third-party verification, Defendants cannot meet their burden under § 102.

Third, the reliance on a single ASIN listing is particularly unreliable. Products sold under the same ASIN often undergo multiple upgrades or changes over time, meaning that the product shown today may not be the same product first listed in February 2024. And because this case involves a utility patent for an internal component, infringement cannot be determined from a photograph of the final assembled product alone; internal structure and claimed features must be analyzed.

Finally, courts routinely reject invalidity defenses premised on alleged prior sales where the accused device is not shown to be identical in all claim respects. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000). Defendants' screenshot falls far short of that standard and cannot undermine Plaintiff's strong showing of likelihood of success. Courts require clear and convincing evidence to establish invalidity—not speculative assertions raised days after a TRO was entered.

(ii) **Defendants' Prior Art References**

Defendants also cite three prior art references (Defendants' Opposition, Exs. 4–6), but their arguments are procedurally and substantively deficient. They fail to identify whether they are asserting anticipation under 35 U.S.C. § 102 or obviousness under § 103. Courts require clarity on the precise statutory ground for invalidity, and vague assertions that prior art "appears to disclose" the subject matter of a patent are insufficient. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001).

In any event, the cited references do not disclose the required claim limitation of a booster fan arranged at the air outlet. At most, they describe conventional fan structures or ambiguous elements through a machine translation. Without identifying the statutory ground or explaining how each claim limitation is met, Defendants cannot raise a substantial question of validity. Their scattershot references fall far short of overcoming the statutory presumption of validity that attaches to an issued United States patent. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid").

C. **Infringement Clarification**

Plaintiff acknowledges that six of the ASINs identified in Defendants' Opposition—B0BV19FBBODS and five others—do not meet all limitations of the asserted claims and therefore are not the basis of Plaintiff's infringement allegations. However, this does not undermine Plaintiff's case. The same Seller ID is associated with approximately twenty ASINs, and Plaintiff's test purchases included ASINs B0D7MFRQ2C and B0D7MY7TR7, both of which embody the patented configuration and were confirmed to infringe during Plaintiff's infringement analysis.

This illustrates two important points. First, while Plaintiff reasonably grouped ASINs under a common Seller ID at the outset, it is neither required nor practical to purchase and test every individual product offered under a seller's account. Courts have repeatedly recognized that infringement may be shown through representative products where multiple accused products share materially the same features. Second, this evidence underscores why Defendants' reliance on a single screenshot of a Seller Central listing is so unreliable. Even at the same point in time, a seller account may include both infringing and non-infringing ASINs, making it impossible to determine validity or infringement from an isolated screenshot alone.

### III.  Plaintiff Faces Immediate and Irreparable Harm

Defendants suggest that monetary damages are adequate. That is incorrect as a matter of law and fact. Plaintiff is an OEM whose business depends heavily on supplying authorized products to authorized sellers. Defendants' infringing products directly displace these sales, eroding Plaintiff's market share and undermining its relationships with authorized sellers. Once those relationships and distribution channels are lost, they cannot be fully restored by a damages award. Price erosion, loss of market share, and harm to customer goodwill are classic forms of irreparable injury that cannot be adequately compensated with money damages. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (loss of customer relationships and market share constitutes irreparable harm).

Further, Defendants' claim that they are not a "flight risk" ignores the reality of online marketplace litigation. Courts in this District and across the country have repeatedly recognized that foreign e-commerce sellers often dissipate assets as soon as they learn of infringement litigation. Plaintiff's experience in prior cases confirms this pattern—sellers have quickly transferred

funds out of their accounts immediately upon learning of TRO enforcement. As detailed in the Declaration of Plaintiff CEO, submitted with Plaintiff's TRO motion (ECF No. 5-1), Plaintiff has repeatedly observed that defendants in similar Schedule A cases immediately transfer or dissipate funds upon learning of enforcement proceedings. Plaintiff's prior enforcement experience confirms that without an asset freeze that binds Amazon and payment processors, infringing proceeds will be moved offshore beyond this Court's reach.

The same risk applies to inventory. Through Amazon's Fulfillment by Amazon (FBA) platform, sellers may at any time issue removal orders directing Amazon to liquidate, dispose of, or ship infringing products to an address of their choosing. Once returned, those goods can be re-labeled and re-listed under a new seller ID. *See* attached **Exhibit 2** (screenshot of removal order form). Although Amazon treats such removals as "ordinary course of business," infringers exploit this loophole to sidestep court orders. Without an effective freeze that binds Amazon and payment processors, the TRO cannot preserve the status quo.

Finally, if Defendants truly believe they pose no flight risk, they should be willing to back that claim by posting a bond equal to the value of the frozen assets. Their refusal to do so speaks louder than their assurances.

The TRO and preliminary injunction is necessary to preserve the status quo, prevent dissipation of assets, and ensure that any judgment obtained in this action will be enforceable.

### IV. The Balance of Equities and Public Interest Favor Injunctive Relief

Defendants argue that the public is harmed by an injunction. In fact, the opposite is true. The public interest is served by enforcing valid utility patent rights—the core exclusionary rights

granted by Congress in exchange for innovation. Consumers benefit when innovation is protected and investment in new technology is encouraged, not when competitors are permitted to appropriate patented inventions without authorization. Enforcing patents preserves the incentive structure that drives technological progress and ultimately benefits the public. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude."); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation, which in turn benefits the public.").

As to equities, Defendants face no cognizable hardship from being required to cease infringing sales pending resolution of this case. Any legitimate, non-infringing sales can continue, and if Defendants ultimately prevail, their accounts can be restored. Plaintiff, by contrast, faces irreparable competitive harm absent an injunction, including loss of sales, erosion of authorized distribution channels, and long-term damage to customer relationships.

## V. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for a Preliminary Injunction in full.

Date: September 9, 2025

Respectfully submitted,

*/s/ John H. Choi*
John H. Choi (local counsel)
JOHN H. CHOI & ASSOCIATES LLC
65 Challenger Road, Suite 100
Ridgefield Park, NJ 07660
Email: jchoi@jchoilaw.com
Tel:   (201) 580-6600
Fax:   (201) 625-1108


Keren Hu (*pro hac vice* application forthcoming)
Javalon Law, PC
405 El Camino Real No 558
Menlo Park, CA 94025
Phone: (650)608-5726
Email: kerenhu@javalonlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this September 9, 2025. The defendants will be served by electronic mail.


*/s/ John H. Choi*
John H. Choi