## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>

JOHN DOE,

               *Plaintiff,*


     v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

             *Defendants.*

</td><td>

**Civil Action No.: 2:25-cv-14859-MCA-JRA**

**EMERGENCY MOTION**

</td></tr>
</table>

**DEFENDANTS SHENZHENSHI LIANHENG ELECTRONICS TECHNOLOGY CO., LTD. AND SHENZHEN JIARUIHENG TRADING CO., LTD.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... 2

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ........................................................................................................... 6

I.   PLAINTIFF FAILED TO SHOW A PRIMA FACIE CASE OF PERSONAL JURISDICTION ........................................................................ 6

II.   PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS PATENT INFRINGEMENT CLAIMS. ............................................ 7

   A.   Plaintiff Has Not Shown Likely Infringement By The Accused Products. ...................................................................................... 8

      1.   "Air-Driving fan" is a component distinct from "booster fan," and "fan" means a rotating air-moving device (impeller with blades) that adds energy to the airflow ........................................................ 10

      2.   The Accused Wearable Fans do not infringe the '977 Patent. ................. 11

   B.   There Is At Least A Substantial Question of Validity. ................................ 13

      1.   The '977 Patent Is Anticipated By Public Use or Sale Under 35 U.S.C. § 102(a)(1), and Judicial Estoppel Applies to the Plaintiff From Contending Distinction. ................................................. 14

      2.   Claim 1 Of The '977 Patent Is Rendered Obvious Under 35 U.S.C. § 103 In View Of Deng In Combination With SANYO. ............................ 17

III.   PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM. ......................... 18

IV.   BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR A PRELIMINARY INJUNCTION. .................................................... 20

CONCLUSION ........................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Schedule A" Cases,*
No. 2:25-cv-946 (W.D. Pa. 2025) .................................................................... 6

*Abbot Labs v. Sandoz, Inc.,*
544 F.3d 1341 (Fed. Cir. 2008) .................................................................... 5

*Altana Pharma AG v. Teva Pharm. USA, Inc.,*
566 F.3d 999 (Fed. Cir. 2009) .................................................................... 13

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001) .......................................................... 5, 8, 13, 18

*Amgen Inc. v. Sandoz Inc.,*
923 F.3d 1023 (Fed. Cir.), reh'g granted, opinion modified, 776 F.
App'x 707 (Fed. Cir. 2019) .................................................................... 10

*Anton/Bauer, Inc. v. PAG, Ltd.,*
329 F.3d 1343 (Fed. Cir. 2003) .................................................................... 6

*Apple Inc. v. Samsung Elecs. Co.,*
695 F.3d 1370 (Fed. Cir. 2012) .................................................................... 20

*Apple, Inc. v. Samsung Elec. Co., Ltd.,*
678 F.3d 1314 (Fed. Cir. 2012) .................................................................... 18

*Astra-Zeneca LP v. Apotex, Inc.,*
633 F.3d 1042 (Fed. Cir. 2010) .................................................................... 8

*Automated Merch. Sys., Inc. v. Crane Co.,*
357 F. App'x 297 (Fed. Cir. 2009) .................................................................... 19

*Bayer AG v. Elan Pharm. Rsch. Corp.,*
212 F. 3d 1241 (Fed. Cir. 2000) .................................................................... 12

*Bicon, Inc. v. Straumann Co.,*
441 F. 3d 945 (Fed. Cir. 2006) .................................................................... 11

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .......................................................................... 6

*Burke v. Quartey,*
    969 F. Supp. 921 (D.N.J.1997) ....................................................... 6

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .................................................................... 5, 19

*Eicher Motors Ltd. v. Partnerships & Unincorporated Ass'ns Identified on
    Schedule "A",*
    2025 WL 2299593 (N.D. Ill. Aug. 8, 2025) (mem. op. & order) ....................... 3

*Entergris, Inc. v. Pall Corp.,*
    490 F.3d 1340 (Fed. Cir. 2007) ....................................................... 13

*GuideTech Inc. v. Brilliant Instruments, Inc.,*
    No. 4:09-cv-05517, 2014 WL 4182340 (N.D. Cal. Aug. 22, 2014) .................. 19

*Helifix, Ltd. v. Blok-Lok, Ltd.,*
    208 F.3d 1339 (Fed. Cir. 2000) ....................................................... 13

*Helmsderfer v. Bobrick Washroom Equip., Inc.,*
    527 F.3d 1379 (Fed. Cir. 2008) ....................................................... 11

*Intel Corp. v. ULSI Sys. Tech., Inc.,*
    995 F.2d 1566 (Fed. Cir. 1993) ........................................................ 5

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC,*
    734 F.3d 1361 (Fed. Cir. 2013) ....................................................... 18

*Minnesota Mining & Mfg. v. Chemque, Inc.,*
    303 F.3d 1294 (Fed. Cir. 2002) ....................................................... 15

*NantKwest, Inc. v. Lee,*
    686 F. App'x 864 (Fed. Cir. 2017) .................................................... 17

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.,*
    357 F.3d 1319 (Fed. Cir. 2004) ........................................................ 5

*New England Braiding Co., Inc. v. A.W. Chesterton Co.,*
    970 F.2d 878 (Fed. Cir. 1992) ........................................................ 13

iii

*New Hampshire v. Maine*,
   521 U.S. 742 ............................................................................................ 16

*Nutrition 21 v. United States*,
   930 F.2d 867 (Fed. Cir. 1991) ................................................................. 7

*Nutrition 21 v. United States*,
   930 F.3d 867 (Fed. Cir. 1991) ............................................................... 19

*Oakley v. Sunglass Hut Int'l*,
   316 F.3d 1331 (Fed. Cir. 2003) ............................................................... 8

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005) ............................................................... 9

*Philips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ........................................... 10

*Promier Prods. Inc. v. Gearoz*,
   No. 2:25-cv-00497 (W.D. Pa. 2025) (mem. order) .................................. 6

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
   32 F.3d 1552 (Fed. Cir. 1994) ................................................................. 5

*Robert Bosh LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ............................................................. 18

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
   748 F.3d 1159 (Fed. Cir. 2014) .......................................................... 5, 8

*Winter v. Nat'l Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 5, 18

*Woodland Trust v. Flowertree Nursery, Inc.*,
   148 F.3d 1368 (Fed. Cir. 1998) ............................................................. 15

**Statutes**

35 U.S.C. § 102 ............................................................................................ 8

35 U.S.C. § 102(a) ................................................................................. 14, 15

35 U.S.C. § 102(a)(1) ............................................................................. 14, 16

35 U.S.C. § 103 .............................................................................. 8, 17

35 U.S.C. § 282 ................................................................................. 13

**Rules**

Fed. R. Civ. P. 65(a) ........................................................................... 1

**Other Authorities**

U.S. Patent No. 10,087,951 ............................................................... 17

U.S. Patent No. 12,180,977 ................................... 2, 4, 8, 9, 11, 14, 15, 17

Defendant No. 7– Shenzhenshi Lianheng Electronics Technology Co., Ltd. d/b/a Astaowl ("Astaowl"), and Defendant No. 8–Shenzhen Jiaruiheng Trading Co., Ltd., d/b/a Tunise ("Tunise") (collectively, the "Defendants") submit this Opposition to Plaintiff's motion to extend the Amended TRO entered *ex parte* by the Court (ECF No. 18) and in advance of the preliminary injunction hearing scheduled for September 9, 2025, as set forth in the Court's September 2, 2025 Letter Order. *See* ECF No. 21 (the "Letter Order"). In the  Letter Order, the Court (i) directed that no preliminary-injunction hearing would be conducted until all Defendants have been served and given notice in accordance with the Amended TRO, (ii) adjourned the hearing to September 9, 2025 to ensure notice, and (iii) extended the Amended TRO only until the conclusion of that hearing. *See* ECF No. 21. Notably, to date Plaintiff has not filed a Motion expressly seeking a Preliminary Injunction under Fed. R. Civ. P. 65(a); accordingly, the 7 and 8 Defendants respond in opposition to the preliminary relief implicitly sought through Plaintiff's TRO submissions and its requested extension of the Amended TRO Order. *See, e.g.*, ECF No. 5 (the "TRO Memo"); Amended TRO Order; ECF No. 23 (the "Motion Ext. TRO").

Subject to and without waving Defendants' objections, including lack of personal jurisdiction and any service deficiencies, Plaintiff has not satisfied is heavy burden to support the entry of the injunctive relief it seeks. To the contrary, on the record before this Court, Plaintiff has not established (and cannot establish) (1) likelihood of success

1

on the merits; (2) irreparable harm beyond speculative assertions untethered to these defendants; (3) that a balancing of the equities favors Plaintiff; or (4) public interest supporting extraordinary relief. As detailed herein, the Court should decline Plaintiff's invitation to continue the restraints imposed by the Amended TRO and should refuse to enter a preliminary injunction.

## INTRODUCTION

This action arises out of Plaintiff's allegation that the wearable fans sold by Astaowl and Tunise (collectively, the "Accused Wearable Fans") infringe U.S. Patent No. 12,180,977 (ECF No. 2-1, the "'977 Patent"). *See* ECF No. 2 ("Complaint") ¶¶ 9-11, 15-33; *see also* the TRO Memo. On the basis of this assertion, Plaintiff succeeded in obtaining a TRO restraining Astaowl and Tunise and crippling their business all before Astaowl and Tunise were provided with any opportunity to present a defense. But Plaintiff's tactics and outcomes should end there because it fails to satisfy its heavy burden of demonstrating that it is entitled to any injunctive relief against Astaowl and Tunise.

By way of brief background, the "Schedule A" litigation model emerged in the early 2010s in the Northern District of Illinois as a mechanism for brand owners to combat foreign sellers on online marketplaces. It typically involves filing a complaint under seal, listing dozens or hundreds of defendants on a "Schedule A," and seeking *ex parte* temporary restraining orders and prejudgment asset restraints before any defendant

2

has an opportunity to appear. By the time defendants are heard, their accounts are often frozen, and funds restrained. Although Schedule A cases were initially justified as a response to real concerns over counterfeiting, courts have increasingly recognized that the model stretches procedural rules to their breaking point, especially through mass joinder, sealing, and routine *ex parte* relief. See *Eicher Motors Ltd. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A,"* 2025 WL 2299593, at 1–6 (N.D. Ill. Aug. 8, 2025) (mem. op. & order).

Plaintiff's conduct illustrates how the Schedule A process can be misused—not as a tool to address counterfeiting, but as a means of attacking legitimate competitors. *Id*. at 22. In its TRO Memo, Plaintiff conclusively and falsely alleges: "Defendants— foreign entities operating anonymously—are likely to transfer or conceal funds, rendering any judgment unenforceable." *See* TRO Memo. at 15. In reality, nothing could be further from the truth: Defendants are *not* operating anonymously. Defendants provided accurate and truthful business information on Amazon. *See* Zhong Decl. Ex A-2; Zhang Decl. Ex T-1. Defendants are established enterprises with verifiable business addresses and significant commercial operations, generating millions of dollars in annual revenue, maintaining substantial inventory in Amazon's FBA warehouses, and fulfilling tens of thousands of customer orders each year. *See* Zhong Decl. ¶15; Zhang Decl. ¶12. The Court should not credit Plaintiff's wholly unsubstantiated assertion that businesses of this scale would abandon their operations

3

simply because of an infringement allegation. The lack of evidentiary support for Plaintiff's arguments betrays the fact that it did not conduct any due diligence into Defendants' businesses (or chose to ignore what information it had) and instead relies on conclusory allegations not tied to any evidence.

Plaintiff's impropriety is compounded by the fact that on July 31, Defendants' counsel sent Plaintiff's counsel John H. Choi an email expressly disclosing that TUNISE was represented by counsel and attaching a licensing agreement between TUNISE and Mr. Choi's client in a separate case. *See* Che Decl. ¶¶3, 4, 5; Exhibit SC-1. Mr. Choi confirmed receipt and stated that he would discuss the matter with his client. An *ex parte* proceeding is clearly unjustified against a party whose representation was known to Plaintiff's counsel.

Plaintiff's attempt to enforce the '977 Patent understores a clear abuse of the patent system, seeking to weaponize litigation not to protect innovation, but to gain an unfair competitive edge and suppress lawful market competition. First, Plaintiff cannot establish a likelihood of success on the merits. It fails to address claim construction issues or show that the Accused Wearable Fans will likely meet all limitations of any asserted patent claim. On the other hand, Defendants have satisfied their burden of proving noninfringement, even under the broadest reasonable interpretation of the claim terms, not only raising a substantial question regarding noninfringement, but proving the '977 Patent is invalid as a matter of law.

4

More importantly, Plaintiff relies entirely on misapplied legal standards in its TRO Memo. to support their position. That misplaced reliance also embodies vague speculation and conclusory attorney arguments. Plaintiff fails to present any concrete, non-conclusory evidence demonstrating that it has suffered, or is likely to suffer, irreparable harm, which cannot be remedied by monetary damages. Nor does it establish the required strong causal nexus between the alleged infringement and any purported harm.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). It is exceedingly rare in patent cases. Contrary to Plaintiff's assertion, the Federal Circuit has stated that "[a] preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).

It is well established that "[t]he grant or denial of a preliminary injunction … is within the sound discretion of the district court." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). One can issue only if the movant proves: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of

5

equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 1375-76 (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The first two factors–likelihood of success on the merits and irreparable harm–are the most critical in a patent case, and a court may deny a motion for a preliminary injunction if "a party fails to establish either of the[se] two critical factors." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994).

Patent cases do not "require unique treatment." *Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1365 (Fed. Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006)). The issuance of a preliminary injunction requires an independent and substantive evaluation of the evidentiary support, and "the movant must establish at the very least both … a likelihood of success on the merits and irreparable harm." *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003).

## ARGUMENT

## I.    PLAINTIFF FAILED TO SHOW A PRIMA FACIE CASE OF PERSONAL JURISDICTION

A state may exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). Plaintiff must prove that the defendant has

purposefully availed himself of the forum state. See *Burke v. Quartey*, 969 F. Supp. 921, 924 (D.N.J.1997).

In the Third Circuit, it is well settled that test purchases made by Plaintiff alone are insufficient to establish personal jurisdiction. *See In re "Schedule A" Cases*, No. 2:25-cv-946, at 4 (W.D. Pa. 2025) (standing order) ("The law is well settled that simply being an online seller on Amazon is not enough. And the law is also well settled that a plaintiff cannot create personal jurisdiction by ordering a product to be shipped to the forum."); *see also Promier Prods. Inc. v. Gearoz*, No. 2:25-cv-00497, ECF No. 86, at 7–8 (W.D. Pa. Jul. 8, 2025) (mem. order) (holding that screenshots apparently produced by plaintiff or counsel for the purpose of establishing jurisdiction were insufficient to establish personal jurisdiction).

The burden rests on the Plaintiff to make a *prima facie* showing that Defendants have sufficient contacts with New Jersey to justify the exercise of jurisdiction. Here, Plaintiff offers no evidence that Defendants purposefully directed their activities toward New Jersey. The only alleged "contacts" are test purchases orchestrated by Plaintiff itself. Plaintiff has not identified any sales to New Jersey customers, targeted advertising, distribution agreements, or other conduct showing that Defendants invoked the benefits and protections of New Jersey law. Absent such evidence, Plaintiff has failed to carry its burden of establishing minimum contacts, and the Court lacks personal jurisdiction over Defendants.

7

Because personal jurisdiction is a threshold issue, its absence renders the TRO void ab initio, and consequently, the TRO extension must be denied and the motion for preliminary injunction must be denied as well.

## II.  PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS PATENT INFRINGEMENT CLAIMS.

"[A]t the preliminary injunction stage, because of the extraordinary nature of the relief, the patentee carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991).

Hence, "[f]or [Plaintiff] to establish that it is likely to succeed on the merits, it 'must demonstrate that it will likely prove infringement of one or more claims of the patent-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer.'" *Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (quoting *Amazon.com*, 239 F.3d at 1351). "A preliminary injunction should not issue if an alleged infringer raises a substantial question regarding either infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that the patentee has not shown lacks substantial merit." *Id.*

Plaintiff is unlikely to succeed on the merits, as the Accused Products do not infringe Claim 1 of the '977 Patent – either literally or under the doctrine of equivalents

8

– and because Claim 1 is invalid both in light of prior arts under 35 U.S.C. §§ 102 and 103.

### A.     Plaintiff Has Not Shown Likely Infringement By The Accused Products.

To show likelihood of success on the merits for the purpose of a preliminary injunction, Plaintiff "must prove that success in establishing infringement is more likely than not." *Trebro*, 748 F.3d at 1166. Assessment of the likelihood of infringement involves two steps: first, claim construction – a court determines the scope and meaning of the claims asserted; second, the court compares the properly construed claims to the allegedly infringing device or method. *Oakley v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). To infringe, Plaintiff must show that the Accused Wearable Fans "[meet] every claim limitation either literally or under the doctrine of equivalents." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005). Plaintiff has failed to plausibly plead that the Accused Wearable Fans infringe the '977 Patent, and therefore has not come close to meeting its burden of proof justifying the extraordinary remedy of a preliminary injunction.

Plaintiff's  Complaint and TRO Memo include no substantive analysis of either step, citing no federal precedents determining patent infringements.[1] At the outset,

---

[1] *See e.g.*, the TRO Memo. at 10 (alleging infringement conclusively, relying on presumption of validity for the benefit of arguing patent infringement, without adequate legal foundation).

9

Plaintiff relies on three generalized and conclusive claim charts to prove the asserted infringement of a utility patent; In particular, it offers no analysis of whether Claim 1 of the '977 Patent actually reads on the Accused Wearable Fans. Plaintiff's infringement theory rests solely on a simplistic and overbroad mapping of the '977 Patent's Claim 1 to the Accused Wearable Fans, without offering any meaningful analysis of the claim terms or how each claim limitation is allegedly met. This omission is telling.

First, the Accused Wearable Fans bear no resemblance to the embodiments disclosed in the '977 Patent and, on their face, do not practice Claim 1. In particular, they lack the required limitation of "a booster fan arranged at the air outlet (32)" as expressly recited in the claim language. *See* the '977 Patent, Claim 1. This key structural feature is neither present nor even approximated in the Accused Wearable Fans, underscoring the absence of infringement.

Further, Plaintiff's infringement allegation is purely based on attorney arguments, providing no expert evidence that one would expect to support its infringement claims. Instead, Plaintiff brushes aside the two requirements for establishing infringement: claim construction and expert evidence from one of skill in the art, mapping the construed claims to the accused device. Even under "plain and ordinary meaning" claim terms' interpretation, Plaintiff's infringement theory is unfounded. As the Federal Circuit made clear in *Philips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*), "the ordinary and customary meaning of a claim term is the meaning that the term would have

10

to a person of ordinary skill in the art," and that person is presumed to read the term " in the context of the entire patent, including the specification."

Here, in light of the context provided by the patent's claims and specification, at least two claim terms require construction to determine the proper scope of Claim 1: (1) "fan" and (2) "booster fan."

> **1.    "Air-Driving fan" is a component distinct from "booster fan," and "fan" means a rotating air-moving device (impeller with blades) that adds energy to the airflow.**

Under *Philips*, claim terms carry their ordinary meaning in view of the intrinsic record, and different terms are presumed to have different scope. *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir.), reh'g granted, opinion modified, 776 F. App'x 707 (Fed. Cir. 2019) ("Our precedent instructs that different claim terms are presumed to have different meanings.") (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008)). Claim 1 of the '977 Patent first recites an "air-driving fan blade group (4) arranged in the air duct (3)," and then separately recites "a booter fan arranged att he air outlet (32)," followed by the functional clause "the booster fan boosts the air flow output by the air-driving fan blade group (4)." As such, the structure requires two different devices in series: the upstream "air-driving fan" producing airflow and a downstream "booster fan" subsequently acting on that airflow output to add energy.

Consistent with ordinary technical usage and with the claim's allocation, "fan" should be construed to mean a ***rotating air-moving device*** (impeller with blades) that

adds energy to the airflow. The '977 Patent already assigns no-fan flow-conditioning tasks to other elements. *See e.g.*, Claim 1 of the '977 Patent (an "air flow direction guiding member" and a "rectifying and boosting hood."). Reading "fan" broadly to include stationary grilles or guides would collapse these distinct elements and contradict the claim's internal logic. Courts avoid constructions that render other claim language meanings. *See Bicon, Inc. v. Straumann Co.*, 441 F. 3d 945, 950 (Fed. Cir. 2006).

### 2.    The Accused Wearable Fans do not infringe the '977 Patent.

Even under the broadest reasonable construction, Claim 1 requires two distinct fan stages in series. *See supra* § II.A.1. On the contrary, the Accused Wearable Fans are single-state devices. They contain one rotating impeller recessed inside the housing and a stationary outlet grille at the discharge opening. Because there is no second, outlet-arranged rotating fan that adds energy to the first fan's output, the "booster fan … at the air outlet" limitation is absent. Under the all-element rule, that alone defeats literal infringement.

The exploded view and photograph of the Accused Wearable Fans confirm the non-infringement position. *See* Fig. 2 (showing the Accused Wearable Fans embody a fixed front grille and internal ribs that do not rotate and have no power input). These fixed parts perform safety/structural and coarse screening functions; they do not impart work to the airstream. As such, Plaintiff cannot identify any component "at the air outlet" that is a fan, much less one that boosts the airflow. The failure of even a single claim

limitation defeats a finding of literal infringement. *See Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F. 3d 1241, 1247 (Fed. Cir. 2000) ("If any claim limitation is absent from the accused [product], there is no literal infringement as a matter of law."). Accordingly, Plaintiff cannot establish that the Accused Wearable Fans satisfy every limitation of Claim 1, and the infringement claim fails as a matter of law.



Fig. 2

**B.    There Is At Least A Substantial Question of Validity.**

When opposing a motion for preliminary injunction based on patent invalidity, the defendant is not required to establish invalidity by clear and convincing evidence, as would be required at trial. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009). Instead, "[v]ulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Altana Pharma*, 566 F.3d at 1006 (quoting *Amazon.com*, 239 F.3d at 1359). A preliminary injunction is therefore improper if

Defendants show merely a "substantial question of validity." *Id*. Once Defendants present evidence demonstrating the '977 Patent's invalidity, Plaintiff bears the burden of "responding with contrary evidence" and "persuad[ing] the court that, despite the challenge presented to validity, [Plaintiff] nevertheless is likely to succeed at trial on the validity issue." *Titan Tire*, 566 F.3d at 1377.

In the absence of a valid patent, no infringement can be found. "A patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity." *Entergris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007) (citing *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000)). Plaintiff cannot rely solely on the statutory presumption of validity under 35 U.S.C. § 282 to carry its burden; the presumption does not preclude Defendants from raising substantial questions concerning '977 Patent's validity at the preliminary injunction stage. *See New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992) ("The presumption does not relieve a patentee who moves for preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity.").

1.     **The '977 Patent Is Anticipated By Public Use or Sale Under 35 U.S.C. § 102(a)(1), and Judicial Estoppel Applies to the Plaintiff From Contending Distinction.**

14

Section 102(a) provides that a person is not entitled to a patent if the "invention was known or used by others in this country or patented or described in a printed publication in this or a foreign country, before the invention thereof by the application for patent." 35 U.S.C. § 102(a).

Here, the '977 Patent was filed in the U.S. on May 17, 2024, issued on December 31, 2024, and claims priority to a Chinese patent dated April 22, 2024. The '977 Patent is entitled "High-Speed Booster Fan Module." The named inventor of the '977 Patent is Shunwan He[2].

Factual basis on the record shows that the Consolidated Amazon Screenshots of Def Listings (ECF No. 2-4, the "Def. Listing ASINs") filed by Plaintiff identify CAZOKASI as a defendant and include an ASIN (B0CVFXC82G) that corresponds to CAZOKASI's wearable fans. Plaintiff relies on those materials to argue that the listed products embody the asserted invention and to obtain *ex parte* relief. *See* Def. Listing ASINs at 123 (identifying ASIN - B0CVFXC82G, and showing Date First Available as February 29, 2024). Identically, the CAZOKASI Amazon detail page renders "Date First Available: February 29, 2024," which is two months prior to the priority date of the '977

---

[2] Several co-defendants contend that the '977 Patent was never assigned to Plaintiff and that Plaintiff therefore lacks standing to enforce it. *See* ECF No. 38, at 4-6; *see also* ECF No. 38-3. Noting that the issue is now before the Court and, to the extent of the patent owner's dispute, it provides an independent basis to deny the extraordinary relief.

Patent. *See* Ex.1, CAZOKASI Prior Art (showing the first available date). Thus, on one hand, Plaintiff essentially proffers the evidence demonstrating that the CAZOKASI wearable fans satisfy each claimed limitation; on the other hand, Plaintiff concedes the first available date of the CAZOKASI wearable fans sold under ASIN B0CVFXC82G is roughly two months prior to the '977 Patent's priority date.

It is undisputed that the CAZOKASI Prior Art can serve as the basis for anticipation under 35 U.S.C. § 102(a)3. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ([A] person cannot patent what was already known to others. If the invention was known to or used by others in this country before the date of the patentee's invention, the later inventor has not contributed to the store of knowledge, and has no entitlement to a patent."); *see also Minnesota Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).

Plaintiff's own litigation positions reinforce the conclusion under judicial estoppel and judicial admissions. Initially, when requesting the unjustified *ex parte* relief, Plaintiff represented to the Court that the CASOKASI Prior Art embodies the asserted invention and is an accused product. *See* Complaint ¶ 2 (alleging that "As shown in [Def. Listing ASINs], one or more screenshots per Defendant confirm: (a) the product image and title

---

[3]Section 102 (a) provides that a patent is anticipated and, therefore, invalid if the claimed invention was patented or described in a printed publication before the invention by the applicant. 35 U.S.C. §§ 102 (a).

of the accused product, (b) the Defendant's seller alias, (c) the sales price, and (d) a ship-to address within the State of New Jersey or another U.S. shipping."). The Court relied on those representations in granting the extraordinary TRO relief. *See* ECF NO. 8 (the "TRO Order"); *see also* the Amended TRO Order. Having obtained relief by asserting that CAZOKASI Prior Art is an infringing embodiment, Plaintiff is estopped from now contending that the same ASIN is not an anticipatory or invalidating prior-art sale that predates the '977 Patent's priority date. S*ee New Hampshire v. Maine*, 521 U.S. 742, 749-51 (judicial estoppel applies when a party asserts a position, succeeds in persuading a court to accept it, and would derive an unfair advantage from a later inconsistent position.).

Plaintiff cannot have it both ways – using the CAZOKASI Prior Art listing as proof of infringement while denying its legal consequence for invalidity. First, on the merits, the record supports anticipation under § 102(a)(1) if, as Plaintiff claims, the CAZOKASI Prior Art embodies the same design and the same claimed elements. Second, at a minimum, Plaintiff's own exhibits and admissions raise a substantial question of validity that defeats any request for preliminary injunctive relief and compels the Court's denial.

**2.    Claim 1 Of The '977 Patent Is Rendered Obvious Under 35 U.S.C. § 103 In View Of Deng In Combination With SANYO.**

17

A claim is "obvious if a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *NantKwest, Inc. v. Lee*, 686 F. App'x 864, 867 (Fed. Cir. 2017) (internal citations omitted).

During the prosecution of the '977 Patent, the examiner considered the closest prior art CN217029352U (Ex. 2, "Deng") and allowed the '977 Patent because Deng allegedly "fails to disclose a rectifying and boosting hood arranged on one side of the flow guide member (2) … such that the air flow is blown out parallel to the axial direction, and the hood performs boosting and turbulence removal." *See* Ex. 3 ("Non-Final Rejection"). Thus, the patentability of Claim 1 of the '977 Patent rests upon the final limitation related to the "rectifying and boosing hood." References that disclose this limitation, in combination with Deng, render Claim 1 obvious and therefore invalid.

U.S. Patent No. 10,087,951 ("SANYO") expressly teaches a boosting hood (*e.g.*, a hub portion) including a "cylindrical-shaped cylindrical portion and a tapered portion provided next to the cylindrical portion" to "increase the width of the air duct toward the outlet." *See* EXHIBIT 4 ("SANYO"), Claim 1. It would have been obvious to one skilled in the art to integrate a boosting hood on top of the DENG art, as taught by SANYO.

In sum, the combination of DENG and SANYO renders Claim 1 of the '977 Patent obvious or at least raises a substantial question of obviousness.

As such, because Plaintiff has provided no evidence demonstrating the Accused

Wearable Fans infringe Claim 1 as properly construed, and because Defendants "[raise] a substantial question concerning [both] infringement [and] invalidity," Plaintiff fails to establish that it is likely to succeed on the merits. *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1366 (Fed. Cir. 2013). Therefore, a preliminary injunction is not appropriate.

## III.    <u>PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM.</u>

There is no presumption of irreparable harm. *Robert Bosh LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Plaintiff must come forward with competent and particularized evidence demonstrating irreparable harm. Failure to prove irreparable harm is an independent ground for denying a preliminary injunction. *See Amazon.com*, 239 F.3d at 1350.

Plaintiff has fallen short of the requisite "'clear showing' that it is at risk of irreparable harm, which entails 'a likelihood of substantial and immediate irreparable injury.'" *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012); *see also Winter*, 555 U.S. at 22 ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury."). Here, Plaintiff fails to show any evidence of actual harm, far from establishing the requisite "'clear showing' that it is at risk of irreparable harm, which entails 'a likelihood of substantial and immediate irreparable injury.'" *Apple*, 678 F.3d at 1325 (Fed. Cir. 2012). Instead, Plaintiff's assertion of irreparable harm consists entirely of attorney arguments, conclusively

19

alleging that "[t]his damage to Plaintiff's competitive position and goodwill is inherently difficult to quantify and cannot be adequately remedied with damages after the fact." *See* TRO Memo., at 12. However, attorney argument alone is insufficient to show irreparable harm. *Nutrition 21 v. United States*, 930 F.3d 867, 871–72 (Fed. Cir. 1991)[4].

Plaintiff further asserts that "Defendants' continued sales directly compete with Plaintiff's own authorized products, leading to immediate price erosion and loss of market share." *See* TRO Memo., at 13. However, "lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a [PI], because granting [PIs] on the basis of speculative loss of market share would result in granting [PIs] 'in every patent case where the patentee practices the invention.'" *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009). In any event, Plaintiff's alleged harm arising from the Accused Wearable Fans is entirely speculative. Plaintiff offers no evidence—such as consumer surveys, sales projections, documented lost sales, or any quantitative data—demonstrating that the Accused Wearable Fans had any actual impact on Plaintiff's business.

---

[4] *See also GuideTech Inc. v. Brilliant Instruments, Inc.*, No. 4:09-cv-05517, 2014 WL 4182340, at *7 (N.D. Cal. Aug. 22, 2014) (rejecting patentee's assertion of irreparable harm as "speculative" because its claim that it "will continue to lose good will, market position, and revenue absent an injunction [was] . . . little more than attorney argument").

Additionally, Plaintiff fails to demonstrate that the remedies available at law, including monetary damages, would be inadequate to compensate for its alleged harm. *See eBay*, 547 U.S. at 391. Any alleged harm suffered by the Plaintiff is quantifiable.

Finally, Plaintiff fails to establish that "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement" to justify a preliminary injunction. *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place." *Id*. Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for other reasons rather the patented features. *Id*.

## IV.  BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR A PRELIMINARY INJUNCTION.

The balance of equities favors the Defendants. At this juncture, denial of a preliminary injunction is essential to restore the *status quo ante* pending this Court's adjudication on the merits. The harm to the Defendants from continued exclusion from the Amazon platform is both immediate and existential: they are effectively barred from their primary sales channel and unable to market their products to their core customer base.

The marketplace harm inflicted on Defendants by the TRO has already been severe and irreversible. Amazon's marketplace rewards continuous sales velocity, review accrual, and advertising history; when a listing is removed, its rank and

21

visibility collapse, and the commercial effects persist even after reinstatement. Plaintiff itself emphasizes that online sales are driven by "product visibility, customer reviews, and platform algorithms," such that each lost day meaningfully alters competitive position. *See* TRO Memo at 13. Those algorithmic and reputational harms do not rejuvenate when a TRO lapses; recovering a marketplace competitive position requires significant reinvestment of time and effort. Lost momentum translates into durable market-share loss. As an industry participant, Plaintiff knows these mechanics and chose an *ex parte* path that foreseeably triggered them. On this record, the harm to Defendants' business is concrete, substantial, and irreparable. *See* Zhong Decl. ¶¶ 10, 11; Zhang Decl. ¶¶ 8, 9.

In contrast, Plaintiff suffers no comparable or irreparable prejudice from the denial of injunctive relief. Plaintiff remains fully able to appear in this action, assert its claims for design patent infringement, and seek monetary or permanent injunctive relief in due course.

Should Plaintiff ultimately prevail, the Court retains full authority to award appropriate damages and impose permanent equitable relief. However, only this Court can prevent the irreparable harm that the Defendants now face as a result of their exclusion from Amazon. This harm will continue unabated unless immediate judicial intervention occurs.

Further tipping the equities in the Defendants' favor is the fact that the previously

22

granted *ex parte* temporary restraining order accepted Plaintiff's infringement allegations under the Patent without affording the Defendants any opportunity to respond, present evidence, or contest the asserted claims. The TRO was issued in the absence of procedural safeguards—no discovery, no adversarial hearing, and no judicial testing of the merits—which is precisely why Plaintiff elected to proceed *ex parte* and invoke Amazon's takedown procedures unilaterally. In doing so, Plaintiff inflicts immediate and severe commercial disruption on the Defendants, while insulating its unsubstantiated claims from meaningful judicial scrutiny. Plaintiff could have conducted due diligence and served Defendants proper notice. However, Plaintiff chose to proceed on an *ex parte* and emergency basis when it had no grounds to do so. The misuse of federal process must not be encouraged, as it is directly against public interests.

Accordingly, Plaintiff faces no cognizable hardship if preliminary relief is denied. The Defendants, by contrast, face the imminent collapse of their Amazon-based businesses, into which they have invested substantial time, capital, and goodwill. Because Plaintiff retains every opportunity to litigate its claims through proper judicial process, the balance of hardships weighs in Defendants' favor.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court enter an Order vacating the Amended TRO, or allowing it to expire on its terms, and

denying Plaintiff's request for a preliminary injunction.

Dated: September 9, 2025

Respectfully submitted,


By:    /s/ Vincent n. Barbera_____
       Vincent N. Barbera
       Jordynn E. Jackson
       BUCHANAN INGERSOLL & ROONEY, P.C.
       550 Broad Street, Suite 810
       Newark, NJ 07102
       T: (973) 273-9800
       E: vincent.barbera@bipc.com
          jordynn.jackson@bipc.com

       Shaoyi Che (*pro hac vice* forthcoming)
       Tianqin Zhao (*pro hac vice* forthcoming)
       YoungZeal LLP
       9355 John W. Elliott Dr., Suite 25555
       Frisco, TX 75033
       T: (717) 440-3382
       E: che@yzlaw.com
          zhao@yzlaw.com

       *Counsel for Defendants Shenzhenshi Lianheng*
       *Electronics Technology Co., Ltd. d/b/a Astaowl,*
       *and Shenzhen Jiaruiheng Trading Co., Ltd. d/b/a*
       *Tunise*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2025, I caused a true and correct copy of the foregoing to be

filed on the Court's CM/ECF system, which served notice on all counsel of record.

By:    <u>/s/ *Michelle S. Cruiz-Ruiz*</u>
              Michelle S. Cruiz-Ruiz

26